UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PURESHIELD, INC., ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-734-SDJ |
| | § | |
| ALLIED BIOSCIENCE, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Allied BioScience, Inc.'s ("ABS") Rule 12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. (Dkt. #19). The motion seeks dismissal of Plaintiffs PureShield, Inc. and ViaClean Technologies, LLC's (collectively, "ViaClean") state-law claim against ABS for tortious interference with a prospective business relationship. ViaClean has responded in opposition, (Dkt. #23), and the Court held a hearing on the motion, (Dkt. #32). Because ViaClean's allegations fail to meet the plausibility standard of *Twombly* and *Iqbal* as to several elements of its tortious-interference claim, ABS's motion will be **GRANTED**.

**I. BACKGROUND**

ViaClean and ABS are competitors in the antimicrobial products industry. ViaClean's products, which are registered with the Environmental Protection Agency ("EPA"), are intended to be applied to surfaces to protect against germs for up to ninety days. In 2020, ABS obtained an EPA emergency regulatory exemption to use its antimicrobial product, SURFACEWISE², without undergoing a full EPA

registration process and began marketing the product.[1] ViaClean contends that ABS "has been falsely advertising SURFACEWISE[2] as the first ever EPA-registered protectant effective against pathogens." (Dkt. #1 ¶ 35). ViaClean further accuses ABS of "disparag[ing] its competition—including [ViaClean]—with false statements" by way of ABS's assertions on its website that "[t]here are *no other EPA-registered products that offer lasting sanitization*" and that "[c]ompanies claiming their products offer residual control of viruses and coronaviruses are doing so illegally." (Dkt. #1 ¶¶ 36–37); (Dkt. #1-28 at 4). ViaClean, however, is "fully authorized to sell [its] EPA-registered antimicrobial products." (Dkt. #1 ¶ 37).

Based on these and related contentions, ViaClean brought this action asserting patent infringement, false advertising, unfair competition, and tortious interference claims against ABS. On the parties' joint motion, the Court severed and stayed Counts I–X of the Complaint pending resolution of the disputes between ViaClean and non-party Novalent, Ltd. regarding rights in and to the patents asserted in this case. (Dkt. #18). Counts XI–XIII, which include ViaClean's false advertising, unfair competition, and tortious interference claims, are moving forward.

---

[1] The exemption was scheduled to expire on August 24, 2021, and limited the product for use only on certain surfaces to combat coronavirus at "27 American Airlines aircraft and airport facilities in Texas" and "two Total Orthopedics Sports and Spine facilities in Texas." (Dkt. #1-23 at 1); (Dkt. #1-24 at 1). However, on July 8, 2021, the EPA "issued a Stop Sale, Use or Removal Order (SSURO) to Allied BioScience for their product SurfaceWise2" and revoked the emergency regulatory exemption after finding that ABS had been "marketing, selling, and distributing SurfaceWise2 in ways that were inconsistent with the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), EPA's regulations, and the terms and conditions of the emergency exemption authorizations." (Dkt. #38-1 at 1).

2

As relevant here, Count XII[2] of ViaClean's Complaint asserts that, through ABS's alleged "false and misleading marketing regarding competing products—such as those offered by [ViaClean]," ABS "has and continues to tortiously interfere with [ViaClean's] prospective business relations in violation of Texas's tortious interference common law." (Dkt. #1 ¶¶ 191, 193). ViaClean further alleges in Count XI of the Complaint that ABS "openly and explicitly deceives consumers by way of false advertisements in violation of 15 U.S.C. § 1125(a)," Section 43 of the Lanham Act. (Dkt. #1 ¶ 178).

ViaClean's tortious-interference claim turns on the contention that ABS has and continues to violate Texas law by tortiously interfering with ViaClean's prospective business relations. Specifically, ViaClean alleges that: (1) ABS's "false and misleading marketing statements have actually interfered and are likely to continue interfering with [ViaClean's] prospective business relations in the same market segment"; (2) but for ABS's false and misleading marketing, "[t]here was a reasonable probability that [ViaClean] would have entered into a business relationship with third parties, including customers or business partners"; (3) "ABS willfully, intentionally interfered with [ViaClean's] prospective business relations with customers" through their alleged marketing tactics; and (4) "[a]s a direct and

---

[2] The Complaint identifies ViaClean's tortious-interference claim as "Count XII," but this is obviously a typo. Based on the twelve previous counts listed and numbered in the Complaint, the tortious interference claim should have been identified as "Count XIII." *See* (Dkt. #1 at 25–56). In this order the Court will reference the cause of action at issue as ViaClean's claim for tortious interference with prospective business relations or as ViaClean's tortious-interference claim.

proximate result of ABS's misconduct," ViaClean has been injured "in the form of actual damages, including lost sales and lost profits." (Dkt. #1 ¶¶ 192–194).

ABS has moved to dismiss ViaClean's tortious-interference claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ABS contends that ViaClean's "threadbare allegations fall far short of the pleading requirements for this claim under Texas law" and "are mere recitations of the elements of this cause of action with little to no factual support." (Dkt. #19 at 1).

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a pleading may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For a claimant to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "[t]o raise a right to relief, the complaint must contain either direct allegations or permit properly drawn inferences to support 'every material

4

point necessary to sustain a recovery'; thus, '[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.'" *Torch Liquidating Tr. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

Texas law governs ViaClean's tortious-interference claim. To prevail on a claim for tortious interference with prospective business relationship, the plaintiff must show that:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citing, among others, *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). Thus, for ViaClean to defeat a Rule 12(b)(6) motion to dismiss its tortious-interference claim, the Complaint must "contain either direct allegations or permit properly drawn inferences to support" every element of a claim for tortious interference with prospective business relations. *Stockstill*, 561 F.3d at 384 (citing *Campbell*, 43 F.3d at 975).

### III. DISCUSSION

ABS argues that ViaClean has failed to plausibly plead each of the five elements required to prevail on a claim for tortious interference with prospective business relations. With one exception, the Court agrees. The Court will address ViaClean's pleadings as to each of the five elements in turn.

### A. Reasonable Probability of a Business Relationship

ViaClean has not plausibly alleged that there was "a reasonable probability that [it] would have entered into a business relationship with a third party." *Coinmach*, 417 S.W.3d at 923. To sufficiently plead the "reasonable probability" element, the plaintiff should "describe the specifics of a proposed agreement that never came to fruition." *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020) (citing *Cooper v. Harvey*, 108 F.Supp.3d 463, 472 (N.D. Tex. 2015)).

Courts have consistently required plaintiffs to do more than vaguely identify potential business partners purportedly influenced by a defendant's alleged misconduct. For example, in *Corrosion Prevention*, the plaintiff moved to dismiss the defendants' counterclaim that accused the plaintiff of tortious interference with a prospective business relationship. 2020 WL 6202690, at *1. In the counterclaim, the defendants stated that the plaintiff contacted several of the defendants' "vendors and customers" to dissuade them from doing business with the defendants. *Id.* at *4. The defendants even named three specific companies that the plaintiffs allegedly contacted. *Id.* Nonetheless, the court held that the defendants had "not alleged any

6

facts showing what business relationship they expected to have with the listed businesses or pointed to a specific contract they allegedly lost because of [the plaintiff's] actions," and thus "failed to allege facts that plausibly state a counterclaim for tortious interference with a prospective business relationship." *Id.* at *5.

Similarly, in *M-I LLC v. Stelly*, the defendant moved to dismiss the plaintiff's claim for tortious interference with prospective business relations under Rule 12(b)(6). 733 F.Supp.2d 759, 775 (S.D. Tex. Aug. 17, 2010). In the complaint, the plaintiff alleged that it had provided services to a third-party company, BP, in the past, and expected to provide those services again in the future for another named project, but instead lost that project to the defendant. *Id.* at 776. The *Stelly* court concluded that the plaintiff's tortious-interference claim fell short of the Rule 12(b)(6) pleading standard because the plaintiff "[did] not plead a reasonable probability that [the plaintiff] and BP would have entered into a contractual relationship" for the future project. *Id.*

Citing *Stelly*, the court in *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, concluded that the plaintiffs in that case likewise had not plausibly pleaded the reasonable-probability element of a tortious-interference claim. No. 3:16-CV-2410, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017). In *Omnitrition*, the plaintiffs claimed that the defendant disparaged the plaintiffs on a conference call with unnamed "independent marketing associates" and that, because the plaintiffs had a close relationship with those on the call, there was a "reasonable probability" they would have entered into a business relationship with them. *Id.* Reasoning that these

7

allegations were even less specific than those in *Stelly*, the court determined that the plaintiffs did not plausibly plead the reasonable-probability element of their tortious-interference claim. *Id.*

Here, ViaClean's pleading includes even less specificity than the reasonable probability-claims in *Corrosion Prevention*, *Stelly*, and *Omnitrition*. The closest that ViaClean comes to pleading the reasonable-probability element in the Complaint is stating that "[t]here was a reasonable probability that Plaintiffs would have entered into a business relationship with third parties, including customers or business partners." (Dkt. #1 ¶ 193). ViaClean argues that its incorporation of the 189 paragraphs preceding this claim provide the factual support needed to plausibly allege it. ViaClean is mistaken. No other allegations in the Complaint point to a specific business relationship that failed to come to fruition. ViaClean is left with its vague contention that it may have entered into a business relationship with unnamed "customers or business partners." By any measure, this is insufficient to meet the reasonable-probability element.[3]

---

[3] Pointing to *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036, 2019 WL 3304890 (N.D. Tex. July 23, 2019), ViaClean asserts that some courts have required less specificity to plausibly plead the reasonable-probability element. (Dkt. #23 at 12) (citing *Shippitsa*, 2019 WL 3304890, at *13). ViaClean misreads *Shippitsa*, which does not support a more lenient plausibility standard in the context of the reasonable-probability element. Unlike ViaClean, the *Shippitsa* plaintiff described a specific group of individuals with whom it could have contracted, namely an identified group of consumers that clicked on plaintiff's advertisement but were redirected to the defendant's website. *Shippitsa*, 2019 WL 3304890, at *13 (concluding that the plaintiff "had a reasonable probability of entering into a business relationship" with the specific consumers who had been redirected to defendant's website). Because ViaClean fails to identify any specific individual or entity with whom it would have contracted but for ABS's alleged misconduct, much less any information on the nature of the prospective agreement, it has not met the plausibility standard for the reasonable-probability element. *See Omnitrition*, 2017 WL 3086035, at *3 (concluding that, where the plaintiff

ViaClean has further argued that the Complaint provides "circumstantial factual support" sufficient to survive ABS's Rule 12(b)(6) challenge. In support of this argument, ViaClean cites *Farouk Sys., Inc. v. Costco Wholesale Corp.*, where the court held that an "allegation of tortious interference [based] on only circumstantial factual support" can "raise a right to relief above the speculative level, and thereby sufficiently stat[e] [a] claim." 700 F.Supp.2d 780, 785 (S.D. Tex. 2010) (internal citation omitted). The *Farouk* decision, however, is unhelpful to ViaClean. In that case, the plaintiff's complaint alleged that the defendant had knowledge of specific contracts between plaintiff and its exclusive distributors; that the only way for defendant to have large inventories of plaintiff's product was by inducing the exclusive distributors to breach their contract with plaintiff; and that defendants were doing this intentionally based on aggressive sales efforts. *See id.* at 784–85. Thus, while the *Farouk* plaintiff based its allegation of tortious interference "on only circumstantial factual support," the plaintiff had "alleged factual allegations and enhancements that raise[d] a right to relief above the speculative level, and thereby sufficiently stat[ed] its claim." *Id.* at 784–85 (cleaned up).

ViaClean's "circumstantial factual support" consists only of a reference to ViaClean's alleged "status in the industry" and of the "wide dissemination of ABS's false advertisement across the industry." (Dkt. #23 at 13). To the extent that "circumstantial factual support" could save otherwise insufficient pleading of the reasonable-probability element, ViaClean's sweeping, nonspecific, and unsupported

---

"merely point[ed] to 'unspecified individuals' and 'some unspecified business relationship,'" the reasonable-probability element was insufficiently pleaded).

9

pronouncements concerning its industry prominence and the wide dissemination of ABS's allegedly false advertisements provide no such support. Thus, ViaClean has failed to plausibly plead that there was a reasonable probability that it would have entered into a business relationship with a third party.

**B. The Intent Requirement**

ViaClean has also failed to plausibly plead that ABS "either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct." *Coinmach*, 417 S.W.3d at 923. To satisfy this element, the plaintiff must plead that the defendant had "actual knowledge of the prospective contract or business relation," because otherwise, the "interference cannot be intentional." *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016), *modified on other grounds*, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017); *see also Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015) ("To show that a defendant's interference was intentional, a plaintiff must show that the defendant had actual knowledge of the prospective business relations.").

Again, the plaintiff must identify a specific business relationship in pleading this intent element of a claim for tortious interference with prospective business relationship. As the *Stelly* court explained, a plaintiff has not adequately pleaded the intent element when there is no allegation that the defendant acted "with a conscious

desire to cause, or with the certain knowledge that, it was preventing [plaintiff's] *specific business relationship* from forming." 733 F.Supp.2d at 776 (emphasis added).

Thus, without "identify[ing] with sufficient particularity" what third party it would have formed a business relationship with but for ABS's alleged interference, ViaClean's allegation that ABS "willfully, intentionally interfered with Plaintiff's prospective business relations with customers," (Dkt. #1 ¶ 193), is "conclusory at best." *See Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, No. 3:14-CV-1204, 2015 WL 11120872, at *2 (N.D. Tex. Sept. 22, 2015) (holding that, where the plaintiff alleged that the defendant tortiously interfered with prospective business relations between two independent third parties and "did not identify with sufficient particularity which client or group of clients would have formed relationships but for [d]efendants' interference," the plaintiff did not plausibly plead the intent element). Because ViaClean has failed to identify a specific third party that it would have entered into business relations with, *see supra* Part III.A, ViaClean has also failed to plausibly plead that ABS acted with a conscious desire to prevent such a relationship from occurring. *Id.*

### C. Independently Tortious Conduct

ViaClean has pleaded with sufficient particularity that ABS engaged in conduct that was "independently tortious or unlawful," as ABS has not challenged the sufficiency of ViaClean's false advertising claim under the Lanham Act. ABS resists this conclusion, arguing that under Texas law the "independently tortious or unlawful" requirement for a claim of tortious interference with a prospective business

11

relationship may only be met through conduct that is tortious or unlawful under state law, not federal law. The Court disagrees.

Although the tort of interference with prospective business relations was recognized by the Supreme Court of Texas in 1891, *see Delz v. Winfree*, 16 S.W. 111, 111–12 (Tex. 1891), it was not until over a century later, in 2001, that the court fully described the contours of this common-law cause of action, *see Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 721–27 (Tex. 2001). As relevant here, after examining the history of the tort, the *Sturges* court observed that "no Texas court has attempted to define what conduct is 'wrongful.'" *Id.* at 724. The court went on to provide a definition, and to distinguish actionable from non-actionable conduct. On its face, the Court's definition of actionable conduct is broad: "We therefore hold that to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Id.* at 726. Thus, conduct that is either "independently tortious" or otherwise "wrongful" could support a cause of action. The court explained that the term "independently tortious" does not require that a plaintiff must be able to prove an independent tort, but rather only that a plaintiff "must prove that the defendant's conduct would be actionable under a recognized tort." *Id.* The *Sturges* court further made clear that the tort did not embrace conduct "that is merely 'sharp' or unfair," and it disapproved of cases that had suggested otherwise. *Id.*

The *Sturges* court did not articulate a standard limited only to conduct that violated state tort law or a state statute. In fact, *Sturges* observes that a plaintiff

could "recover for tortious interference by showing an illegal boycott," *id.*, a type of activity Texas courts have repeatedly recognized violates federal antitrust law, *see, e.g.*, *Marlin v. Robertson*, 307 S.W.3d 418, 428 (Tex. App.—San Antonio 2009, no pet.) (citing *NW. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 293, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985)). Nor is it clear how any such arbitrary limitation would be consistent with or further the standard announced by the court broadly encompassing "independently tortious" or otherwise "wrongful" conduct. For its part, ABS provides no explanation as to why the Texas Supreme Court, without saying so, intended to impose an exemption for conduct made wrongful under federal law.

The Court recognizes that district courts have been split on this issue. Some courts have recognized that if the plaintiff alleges conduct by the defendant that is wrongful under federal law, that is sufficient to satisfy the pleading requirements for the independently-tortious element. *See, e.g.*, *Luminati Networks Ltd. v. Teso LT, UAB*, No. 2:19-CV-00395, 2020 WL 6803256, at *6 (E.D. Tex. July 15, 2020) (concluding that because the plaintiff sufficiently pleaded, among other elements, federal torts, including false advertising under the Lanham Act, the plaintiff adequately alleged tortious interference with prospective contract).

Other courts have determined, consistent with ABS's view, that the underlying independently-tortious conduct may only be a violation of state law, rather than federal law. *See, e.g.*, *PPD Enters., LLC v. Stryker Corp.*, No. 4:16-CV-0507, 2017 WL 4950064, at *3 (S.D. Tex. Nov. 1, 2017) ("[t]he instruction of *Sturgis* [sic] [is] that

13

success on a claim of tortious interference with prospective business relations requires proof of a violation of state law, rather than federal law."). This interpretation of *Sturges* apparently has been derived from the following passage in the opinion: "It appears that in most Texas cases in which plaintiffs have actually recovered damages for tortious interference with prospective business relations, the defendants' conduct was either independently tortious . . . or in violation of state law. . . . [W]e see no need for a definition of tortious interference with prospective business relations that would encompass other conduct." 52 S.W.3d at 726; *see also PPD Enters.*, 2017 WL 4950064, at *3 (quoting this passage of *Sturges* before reaching its conclusion). In the Court's view, this passage should not be read as somehow impliedly exempting conduct made wrongful under federal law. This section of *Sturges* was focused on articulating a liability standard that encompassed only conduct that is "independently tortious" or otherwise wrongful under law, and that does not include "other conduct," i.e., conduct that merely evidences "sharp" or "unfair" business tactics. Indeed, in this same section of *Sturges*, the court disapproved of prior cases imposing liability for "sharp" or "unfair" conduct that was not tortious or otherwise unlawful. 52 S.W.3d at 726. Nothing in the court's discussion suggests an intent to separate conduct made wrongful under federal law and exempt such conduct, nor is there any apparent or principled reason for such an arbitrary exemption.[4]

---

[4] The Texas Supreme Court's subsequent discussion of tortious interference with prospective business relations in *In re Memorial Hermann Hospital System* further confirms the lack of any "exemption" for conduct that is wrongful under federal law. *See* 464 S.W.3d 686, 704–06 (Tex. 2015) (revisiting *Sturges*, explaining that allegations of conduct

14

Because the Court believes that Texas Supreme Court precedent does not somehow impliedly exempt actions made wrongful under federal law from the "independently tortious" or otherwise "wrongful" standard set forth in *Sturges*, and because ViaClean has pleaded a claim for false advertising under the Lanham Act, ViaClean has also sufficiently pleaded the independently-tortious-conduct element of a claim for tortious interference with prospective business relations.

**D. Proximate Cause**

ViaClean has not sufficiently pleaded the proximate-causation element of a tortious-interference claim. The elements of proximate causation are cause in fact and foreseeability. *BHL Boresight*, 2016 WL 8648927, at *12. To determine cause in fact, the inquiry is "whether the act or omission 'was a substantial factor in causing the injury without which the harm would not have occurred.'" *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). Foreseeability turns on the question of whether "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his act created for others." *Id.* Where the plaintiff fails to sufficiently allege other essential elements of tortious interference, the proximate-causation element is also insufficiently pleaded. *Id.* (finding that, because the counterclaimant's pleading did not include "clear allegations of (1) the prospective relationship(s) interfered with; (2) the independently tortious or unlawful activity [the counter-defendant] employed to interfere with such relationships; and

---

contravening antitrust laws could support a claim for tortious interference with prospective business relations, and treating the "independently tortious" or otherwise "wrongful" standard as encompassing conduct made wrongful under state or federal law).

15

(3) damages sustained, the [c]ourt cannot reasonably infer proximate causation"); *see also Official Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199, 2015 WL 8915804, at *6 (N.D. Tex. Dec. 15, 2015) (finding that the proximate-cause element of a claim for tortious interference with prospective business relations was not sufficiently pleaded because the plaintiff failed to sufficiently plead the damages element).

ViaClean alleges that "[a]s a direct and proximate result of [ABS's alleged] misconduct," ViaClean has been injured "in the form of actual damages, including lost sales and lost profits." (Dkt. #1 ¶ 194). However, without sufficiently pleading "the prospective relationship(s) interfered with . . . and damages sustained . . . the Court cannot reasonably infer proximate causation." *BHL Boresight*, 2016 WL 8648927, at *12. Because ViaClean has failed to plausibly plead both the reasonable-probability element, *see supra* Part III.A, and the damages element, *see infra* Part III.E, ViaClean has also failed to plead with sufficient particularity the element of proximate causation.

### E. Damages

ViaClean has failed to sufficiently plead the damages element of a claim for tortious interference with prospective business relations. To prevail on a tortious-interference cause of action, the plaintiff must show that the defendant's "interference proximately caused the plaintiff injury" and that the plaintiff "suffered actual damage or loss as a result." *Coinmach*, 417 S.W.3d at 923. The actual damage or loss "must be ascertainable at the time of the litigation." *Santander Consumer*

16

*USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310, 2017 WL 2729998, at *11 (N.D. Tex. June 26, 2017).

To plead the damages element sufficiently at the Rule 12(b)(6) stage, ViaClean must state more than that it has "been harmed, resulting in actual damages and the loss of prospective contracts." *BHL Boresight*, 2016 WL 8648927, at *12 (internal citation omitted). It is also insufficient for ViaClean to state, without alleging supporting facts, that it has been injured "in the form of actual damages, including lost sales and lost profits," and that "sales are likely diverted from Plaintiffs to [ABS] based on its false advertisement." (Dkt. #1 ¶¶ 183, 192–194). Likewise, the damages element of ViaClean's claim is not pleaded with sufficient particularity if "speculation is required to conclude that . . . [defendant's] interference caused damages." *Omnitrition*, 2017 WL 3086035, at *4 (quoting *Santander*, 2017 WL 2729998, at *11) (alteration in original). Because ViaClean's Complaint does not identify a prospective relationship interfered with, and thus does not plausibly allege that there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party, speculation is required to conclude that ABS's alleged interference caused damages.

For all of these reasons, ViaClean has failed to plausibly allege the damages element of its claim for tortious interference with a prospective business relationship.

### IV. CONCLUSION

ViaClean has failed to plausibly plead four of the five necessary elements of its claim for tortious interference with prospective business relations. Defendant Allied

17

BioScience, Inc.'s Rule 12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, (Dkt. #19), is therefore **GRANTED**. It is hereby **ORDERED** that Plaintiff ViaClean's claim for tortious interference with prospective business relations is **DISMISSED without prejudice**.

The Court **GRANTS** ViaClean leave to replead its claim for tortious interference with prospective business relations.[5] It is further **ORDERED** that ViaClean has **fourteen days** from the date of this order to amend its complaint.

**So ORDERED and SIGNED this 30th day of September, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[5] Unless it appears that amendment would be futile, "a court 'should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" *Kamps v. Baylor Univ.*, 592 F.App'x 282, 286 (5th Cir. 2014) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 607 (5th Cir. 1977)). Because ViaClean "failed to plead a claim with sufficient factual specificity" and this is the Court's "first review of [ViaClean's] pleadings, it is proper to grant [ViaClean] leave to amend [its] Complaint, if it can do so in a way that overcomes the deficiencies identified in this Order." *See Santander*, 2017 WL 2729998, at *12 n.10.